### ALONZO F. NEALE *vs.* THE WEARE BANK.

It the owner of a promissory note delivers it to brokers to procure it to be discounted, and they deliver it for the same purpose to a bank which receives it with an agreement to remit the proceeds to the brokers, but obtains the discount for its own benefit, and keeps the money after a demand for the note by the owner, these facts are insufficient to prove a conversion for which an action of tort can be sustained.

TORT against a bank at Hampton Falls, New Hampshire, for the conversion of two promissory notes, one of which was for $670, dated February 16, 1860, signed by J. A. Coolidge, payable in four months from date to the order of H. F. Coolidge, and by him indorsed, and the other for $1500, dated January 20, 1860, signed by the plaintiff, payable in six months to his own order, and by him indorsed.

At the trial in the superior court, before *Russell,* J., it appeared that in February 1860 the plaintiff purchased the Coolidge note, and on the 16th of that month delivered it to Allen, Neale & Co., brokers with whom he kept an account; and he testified that he thus delivered it to them for them to procure it to be discounted, and to receive the money and place it to his credit, to be drawn out by checks like his other money, subject to a commission for their services, and that he made no inquiry of them about it until their failure on the 17th of April 1860. On the 21st of March 1860, Allen, Neale & Co. indorsed and delivered to George H. Dodge, the defendants' president, various notes, among which was the Coolidge note, and on the 26th of the same month the note of the plaintiff, which was written on

that day and ante-dated; and Dodge received the same as agent of the defendants, to be discounted by them or at a Portsmouth bank or elsewhere. The plaintiff offered evidence tending to show that Dodge received these notes knowing them to be his property, with an agreement that the proceeds thereof when discounted should be sent to Allen, Neale & Co. to be placed to his credit. It appeared that on the same day when Dodge received the $1500 note, he delivered both notes to the defendants, and on the next day the Coolidge note was discounted for the benefit of the defendants at the Portsmouth Bank. On the 17th of April the plaintiff made a formal demand of the defendants for the two notes.

The defendants requested the court to instruct the jury as follows:

1. " No action can be sustained for the note of which the plaintiff was the maker, if unpaid and so held that the plaintiff is not liable to pay it.

2. " If the agreement was that the notes were to be discounted, and the proceeds sent to Allen, Neale & Co., to be by them credited to the plaintiff, on his general account, to be drawn out by the plaintiff on his checks, at his discretion, this action cannot be sustained.

3. " If the notes were left by the plaintiff with Allen, Neale & Co., to be discounted, and they delivered them to Mr. Dodge to be discounted and the proceeds remitted to Allen, Neale & Co., they being entitled to a commission upon the transaction, this action cannot be sustained, until the defendants have notice that Allen, Neale & Co. release their claim, or that they assent to the delivery of the notes or the proceeds to the plaintiff.

4. " The plaintiff cannot maintain the action for the note of which he was the maker."

The judge declined so to do, and instructed them as follows:

" If the notes belonged to the plaintiff, and Mr. Dodge agreed to take them to procure discount and to remit the proceeds to Allen, Neale & Co. for the plaintiff, then the action of the defendant bank ҂ as a conversion of the plaintiff's property; and,

after the failure of Allen, Neale & Co., and the demand made by the plaintiff, the defendant bank was liable."

The jury rendered a verdict for the plaintiff, for the amount of both notes, and the defendants alleged exceptions.

*H. F. French*, (*D. E. Ware* with him,) for the defendants.

*H. W. Paine*, ( *C. C. Nutter* with him,) for the plaintiff.

HOAR, J.  The defendants except to the refusal of the judg who presided at the trial to give certain specific instructions to the jury which were asked by them, and also to the instructions which were given.  Perhaps neither of the instructions asked should have been given, but those which were substituted in the charge of the judge seem to us to have decided as a question of law, upon the evidence, what should have been submitted to the jury as a question of fact.  They are also obnoxious to criticism as including in a single direction the rule which should govern the jury in determining whether there had been a conversion of both notes ; while in one aspect of the evidence very different considerations would be applicable to them.

In regard to the Coolidge note, the evidence tended to show that it was delivered by the plaintiff to Allen, Neale & Co. with an agreement that they should procure it to be discounted, and pass the proceeds to his account, to be drawn upon, with other funds of his in their hands.  The plaintiff contended that the defendants received the note, through their president, knowing it to be the property of the plaintiff, for the purpose of discounting it themselves, or procuring it to be discounted elsewhere, on the agreement that they would remit the proceeds to Allen, Neale & Co., to be carried to his credit ; and then showed that the defendants procured it to be discounted for their own benefit, at the Portsmouth Bank.  The action is tort, for the conversion of the notes.  The instructions were general, that " if the notes belonged to the plaintiff, and Mr. Dodge (the defendants' president and agent) agreed to take them to procure discount and to remit the proceeds to Allen, Neale & Co. for the plaintiff, then the action of the defendant bank was a conversion of the plaintiff's property ; and, after the failure of Allen, Neale & Co., and the demand made by the plaintiff, the defendant bank was

liable." The only act of the bank referred to, on this part of the case, was to procure the note to be discounted for its own benefit.

The jury were to inquire, not whether the defendants were liable to the plaintiff in any form of action, but whether the evidence showed a conversion of the note ; and they were enti-tled to the direction of the court as to what in law would consti tute a conversion. The evidence tended to show that the note was given to Allen, Neale & Co. to procure it to be discounted ; that it was delivered by them to the defendants for the same purpose, and that the defendants obtained a discount upon it at the Portsmouth Bank. In what, then, did the conversion of the note by the defendants consist? Was it an essential part of the agreement that they should procure the discount at the Portsmouth Bank in the name of the plaintiff? The jury had no instructions upon this point, and it would seem at least to have been a question open for their consideration. They might have been satisfied that, by the understanding of all the parties, the defendants were authorized to procure the discount on their own account, and were only bound to remit the proceeds to Allen, Neale & Co. for the use of the plaintiff. If that were so, their liability would not be for the conversion of the note, but for the non-payment of the money. But further, the report of the evidence does not show whether the defendants did or did not credit Allen, Neale & Co. with the proceeds of the note, or whether Allen, Neale & Co. did or did not pass the same to the credit of the plaintiff in his account with them. If, at the time the defendants received the note, Allen, Neale & Co. were in good credit, and the defendants received it according to the usual course of business, and having an open account with Allen, Neale & Co., entered the proceeds of the discount to their credit, and they had notice of the fact, and gave the plaintiff a corresponding credit, so that he could have drawn the amount when he chose, we think this would have constituted a remittance within the meaning of the con-tract between the parties. A draft by the defendants upon Allen, Neale & Co., if they were solvent, and the defendants

had funds in their hands, would have constituted an appropriate and unobjectionable method of remittance; and a transfer on account by mutual consent would amount to the same thing. And on the other hand, we cannot see that, under the arrangement by which the defendants were to procure the discount of the note, their acts could constitute a conversion of it, unless, with a knowledge that Allen, Neale & Co. were insolvent, and with a view to take and apply the property of the plaintiff to their own preëxisting debt, they fraudulently received it from Allen, Neale & Co., and without the intention or expectation that the proceeds would go to the plaintiff's benefit. But no such question was presented by the court to the jury; and from the remark which was made respecting the demand upon the defendants, we think no such view was entertained. Under such an aspect of the case, the demand would have been of no importance, because the conversion would have happened when the note was wrongfully taken.

The same considerations may or may not have been applicable to the other note, the note signed by the plaintiff. If it was actually discounted by the defendants, before the demand of the 17th of April, the same rule would apply. If it had not been discounted, the insolvency of Allen, Neale & Co. might entitle the plaintiff to reclaim it. But even in the latter alternative, if the note continues in the possession of the defendants, the production and surrender of it at the trial, with payment of the costs of suit, would leave the plaintiff entitled only to nominal damages.

As, according to these views, there has been a mistrial, the verdict must be set aside, and a new trial granted.